No. 20-1750 & 20-1751 (Consolidated)

In The
United States Court of Appeals for The Third Circuit

BRADLEY COOPER AND 22ND AND INDIANA, INC.; BRUCE COHEN; BRUCE COHEN PRODUCTIONS; ROBERT DE NIRO; CANAL PRODUCTIONS, INC.; DAVID O. RUSSELL AND KANZEON CORP; AND JOHN GORDON AND JOHN GORDON PRODUCTIONS, INC.

Appellants,

v.

SPYGLASS MEDIA GROUP, LLC, F/K/A LANTERN ENTERTAINMENT LLC

Appellee.

On Appeal from the United States District Court for the District of Delaware
Civil Action Nos. 19-242 & 19-243
United States District Court Judge Maryellen Noreika, Presiding

# BRIEF FOR APPELLANTS

Christopher P. Simon
Kevin S. Mann
CROSS & SIMON, LLC
1105 N. Market Street, Suite 901
Wilmington, DE 19801
(302) 777-4200

Michael I. Gottfried
Roye Zur
Angela M. Butcher
ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, CA 90064
(310) 746-4407

*Attorneys for Appellants Bradley Cooper and 22nd and Indiana, Inc., Bruce Cohen, Bruce Cohen Productions, Robert De Niro, Canal Productions, Inc., David O. Russell and Kanzeon Corp., and Jon Gordon and Jon Gordon Productions, Inc.*

# TABLE OF CONTENTS

INTRODUCTION……………………………………………………………………1

JURISDICTION…………………………………………………...………….3

STATEMENT OF ISSUES……………………………………………..……….3

STATEMENT OF RELATED CASES……………………………………………4

STATEMENT OF THE CASE……………………………………………………..4

A. Debtors File For Bankruptcy And Sell Assets To Spyglass……...……5

B. Spyglass Files A Declaratory Judgment Action Against One Talent Party And Immediately Moves For Summary Judgment ……………..7

C. The Cohen Agreement ……….……………………………………….9

D. The Talent Parties' Motion to Clarify ……………….……………12

E. The Bankruptcy Court Ignored Binding Precedent And Fundamental Summary Judgment Standards To Find The Cohen Agreement Is Not Executory …………………………...…………………………13

F. The District Court Affirmed, Without Considering Whether The Cohen Agreement Was Executory On Its Face Under *General DataComm* …………………………………………………….………………17

SUMMARY OF THE ARGUMENT………………..……………………………20

STANDARD OF REVIEW…………………………………….………………22

ARGUMENT……………………………………………………………………...22

A. The Bankruptcy Court Erred In Granting Summary Judgment For Spyglass Because The Cohen Agreement Is Executory On Its Face ..23

B. The Bankruptcy Court Erred In Granting Summary Judgment Under The Substantial Performance Doctrine Because Spyglass Presented No Evidence To Establish That The Continuing Terms Are Not Material………………………………………………………...…28

1. Summary Judgment May Not Be Awarded Unless The Movant Establishes There Is No Genuine Dispute Regarding Any Material Fact……………………………..………………..29

2. Materiality Of Contract Terms Is A Factual Determination Generally Not Appropriate For Summary Judgment Under New York Law……………………………………….…………30

3. Both The Bankruptcy Court And District Court Failed To Perform The Factual Analysis Required Under New York Law And Foundational Principles Of Summary Judgment…...……33

CONCLUSION…………………………………………….………………..39

# TABLE OF AUTHORITIES

## Cases

*Am. Exp. Bank Ltd. v. Uniroyal, Inc.,*
164 A.D.2d 275, 562 N.Y.S.2d 613 (1990)…………………………...…………..26

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ………………………………………….……………..29

*Avant Guard Props, LLC v. New York City Indus. Dev. Agency,*
2015 WL 7070066 (N.Y. Sup. Ct. Jan 7, 2015) ……………………...………..25

*Bear, Stearns Funding, Inc. v. Interface Grp. -- Nev., Inc.,*
361 F. Supp. 2d 283 (S.D.N.Y. 2005)………………………………………..31, 33

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ……………………………………...……………..29, 37

*F. Garofalo Elec. Co. v. New York University,*
300 A.D.2d 186, 754 N.Y.S.2d 227 (1st Dep't 2002) ………………..…………..31

*General DataComm Industries, Inc. (In re General DataComm Industries, Inc. v. Arcara),*
407 F.3d 616 (3d Cir. 2005) ……………………………………..…………..passim

*Heasley v. Belden & Blake Corp.,*
2 F.3d 1249 (3d Cir. 1993) ……………………………………………..…...22

*Horowitz v. Federal Kemper Life Assurance Co.,*
57 F.3d 300 (3d Cir. 1995) ……………………………………...………..29

*Ideal Dairy Farms, Inc. v. John Labatt, Ltd.,*
90 F.3d 737 (3d Cir. 1996) ……………………………………...…………..29

*In re Columbia Gas Sys. Inc.,*
50 F.3d 233 (3d Cir. 1995) ……………………………………………...…..8, 14

*In re Exide Technologies,*
607 F.3d 957 (3d Cir. 2010) ……………………………………………….……..17

*In re Hawker Beechcraft, Inc.*,
486 B.R. 264 (Bankr. S.D.N.Y. 2013) …………………………...…….. 25, 26, 27, 33

*In re Stein & Day, Inc.*,
81 B.R. 263 (Bankr. S.D.N.Y. 1988) ……………………………………………..37

*Manhattan Life Ins. Co. v. Prussian Life Ins. Co.*,
296 F. 39 (2d Cir. 1924) …………………………………………...………..31

*Mega Grp. Inc. v. Halton*,
290 A.D.2d 673, 736 N.Y.S.2d 444 (3d Dep't 2002) ………………...…………..31

*Norfolk S. Ry. Co. v. Basell USA Inc.*,
512 F.3d 86 (3d Cir. 2008) ……………………………...………….....32, 33

*Otto Preminger Films, Ltd. v. Qintex Entertainment, Inc. (In re Qintex Entertainment, Inc.)*,
950 F.2d 1492 (9th Cir. 1991) …………………………………...……36, 37

*Robeson Indus. Corp. v. Hartford Accident & Indem. Co. (In re Robeson Indus. Corp.)*,
178 F.3d 160 (3d Cir. 1999) ……………………………………………….…..22

*Sharon Steel Corp. v. National Fuel Gas Distribution Corp.*,
872 F.2d 36 (3d Cir. 1989) ………………………………………….……..8

*Teachers Ins. and Annuity Ass'n of Am. v. Coaxial Commc'ns of Cent. Ohio, Inc.*,
807 F. Supp. 1155 (S.D.N.Y. 1992) ……………………………………….…..31

*Viera v. Life Ins. Co. of North America*,
642 F.3d 407 (3d Cir. 2011) ………………………………………….……..22

**Statutes**

11 U.S.C. § 365…………………………………………………….….. passim

28 U.S.C. § 157……………………………………………………...………..3

28 U.S.C. § 158……………………………………………………...…………..3

28 U.S.C. § 1291………………………………………………….……………..3

28 U.S.C. § 1334………………………………………………….……………..3

**Rules**

Fed. R. Civ. P. 56(a) ……………………………………………………..………..29

**Secondary Sources**

Restatement (Second) of Contracts………………………………...…..24, 31, 32

Vern Countryman, Executory Contracts in Bankruptcy: Part I,
57 Minn. L. Rev. 439 (1973) ………………………………...…..………..14

23 Richard A. Lord, Williston on Contracts § 63:3 (4th ed. 2002) ………………25

## INTRODUCTION

Though this appeal stems from a complicated bankruptcy proceeding, the issues presented to this Court turn on the straight-forward application of fundamental principles of contract interpretation and summary judgment standards.

Indeed, the primary question presented — whether the contract at issue is executory for purposes of Section 365 of the Bankruptcy Code — can, and should, be determined from the face of the contract itself. In short, a contract is executory if material obligations remain as to both contracting parties. Under this Court's binding precedent, a term is material on the face of the contract if the contract provides that the breach of that term excuses performance by the other party. Since the contract at issue explicitly provides that the breach of *any* contractual term by the Appellant excuses the indisputably material obligation of the Debtor to pay compensation, all such terms are material and the contract is executory as a matter of law. That should have been the end of the Bankruptcy Court's analysis, and the Appellee's motion for summary judgment on this issue should have been denied.

Instead, both the Bankruptcy Court and the District Court on appeal, ignored this Court's precedent, and basic principles of contract interpretation, to substitute their judgments regarding the materiality of the contract's provisions for the express materiality determination dictated in the contract itself.

Remarkably, the Bankruptcy Court then proceeded to award summary

judgment in favor of the movant-Appellee, even though the movant had presented *no* evidence regarding the purported immateriality of the contract terms. Under bedrock principles of federal law, summary judgment may not be awarded unless the movant has established that there is no disputed issue of material fact. Here, the Appellee moved for summary judgment *one day* after filing its complaint, before any discovery had taken place, and submitted *no* evidence regarding the materiality of any of the contract's provisions. This evidentiary failure should have been fatal to any motion for summary judgment, but was an even more serious error here given that courts have routinely held that the materiality of contract terms is a highly-factual issue generally inappropriate for summary judgment.

In short, the Bankruptcy Court erred by awarding summary judgment based on the court's substitution of its own opinion regarding materiality for the express materiality determination adopted by the parties in the contract itself, and thereby impermissibly excused the movant's failure to carry its burden on summary judgment.

The Bankruptcy Court's order awarding summary judgment, and the District Court's order affirming that award, should be reversed.

## JURISDICTION

The Bankruptcy Court had jurisdiction pursuant to 28 U.S.C. §§ 157(b) and 1334.

The District Court had jurisdiction to hear theappeal from the final judgment of the Bankruptcy Court granting summary judgment in favor of Spyglass, pursuant to 28 U.S.C. § 158(a)(1).

This Court has jurisdiction to hear this appeal from the final judgment of the District Court affirming the Bankruptcy Court's decision, pursuant to 28 U.S.C. §§ 158(d)(1) and 1291.

## STATEMENT OF ISSUES

Whether the District Court erred in affirming the Bankruptcy Court's award of summary judgment in favor of Spyglass — thereby declaring the Cohen Agreement to be nonexecutory — because the Cohen Agreement is executory on its face under this Court's decision in *General DataComm Industries, Inc.* (*In re General DataComm Industries, Inc. v. Arcara*), 407 F.3d 616, 623 (3d Cir. 2005). A2274 (Bankruptcy Court Order dated January 23, 2019 ("Bkcy Order") at 3), A24 (District Court Opinion dated March 20, 2020 ("DCT Op.") at 19).

Whether the District Court erred in affirming the Bankruptcy Court's award of summary judgment in favor of Spyglass because even if the Cohen Agreement is not executory on its face, under bedrock principles of summary judgment, by failing

to submit *any* evidence regarding the alleged immateriality of the continuing terms of the Cohen Agreement, or the transfer of the Agreement to the Debtor, Spyglass failed to carry its burden to establish the lack of disputed issues of material fact as to whether the Cohen Agreement was an executory contract subject to assignment or sale when the bankruptcy petition was filed? A2274 (Bkcy Order at 3), A26 (DCT Op. at 21).

## STATEMENT OF RELATED CASES

This case has not previously been before this Court, and there are no related cases.

## STATEMENT OF THE CASE

This case was born from the bankruptcy of The Weinstein Company ("TWC"), and its affiliates (collectively, the "Debtors"), following the avalanche of sexual misconduct allegations against its joint founder and chief executive, Harvey Weinstein.

Appellants Bradley Cooper, 22nd and Indiana, Inc., Bruce Cohen, Bruce Cohen Productions, Robert De Niro, Canal Productions, Inc., David O. Russell, Kanzeon Corp., Jon Gordon Productions, Inc. (collectively, "Appellants" or the "Talent Parties") are prominent actors, producers, and the writer/director that collectively participated in the making of the critically-acclaimed 2012 motion picture *Silver Linings Playbook* (the "Picture"). The Talent Parties are parties to

various talent agreements with the Debtors under which they are owed millions of dollars resulting from the financial performance of the Picture.

A. **Debtors File For Bankruptcy And Sell Assets To Spyglass**

On March 19, 2018, the Debtors filed their respective voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court of the District of Delaware (the "Bankruptcy Court").

On March 20, 2018, the Debtors filed a motion for approval of the sale of substantially all of the Debtors' assets, including the Talent Parties' respective agreements (the "Sale Motion"), to Spyglass Media Group, LLC, fka Lantern Entertainment LLC ("Spyglass"), pursuant to an Asset Purchase Agreement ("APA"). A200 (Motion).

On May 9, 2018, the Bankruptcy Court entered an order approving the sale pursuant to the APA (the "Sale Order"). A454 (Order). The approved APA required Spyglass to designate, by a date certain, which of the Debtors' executory agreements[1] would be excluded from the sale, and which would be assumed by, and

[1] Under the definition adopted by the Bankruptcy Court and District Court in this case, an executory agreement is one under which material obligations remain for both parties as of the date on which the debtor filed its bankruptcy petition ("Petition Date"). *See also infra* Argument Section A.

assigned to, Spyglass under Section 365 of the Bankruptcy Code ("Section 365).[2] The designation deadline, which was based on the date on which the sale closed, was November 8, 2018. A512 (APA § 2.8(a)).

If an agreement was assumed and assigned under Section 365, the Debtors would be statutorily required to cure all defaults, including those occurring before the Petition Date. 11 U.S.C. § 365(b)(1)(A). Here, the Debtors – and, by designation under the APA, Spyglass – would be responsible for millions in unpaid contingent compensation owed to the Talent Parties under the terms of their respective agreement. A513(APA § 2.8(b)).

Rather than taking a firm position as to the proper designation of the Talent Parties' agreements, Spyglass later purported to "conditionally" designate all such agreements as nonexecutory — thereby removing them from the exclusion-or-cure

---

[2] 11 U.S.C. § 365 provides in relevant part:

(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

(b)

(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, …

requirements of Section 365 — pending a judicial determination regarding the status of the agreements on the Petition Date. A1132-33 (Supplemental Notice ¶ 7 & n. 3-4); A1136 (*id.* at Exhibit A).

### B. **Spyglass Files A Declaratory Judgment Action Against One Talent Party And Immediately Moves For Summary Judgment**

Over three months after the closing of the sale, and only three weeks before the November 8, 2018 APA designation deadline, Spyglass filed an action against only one of the Talent Parties — Bruce Cohen — seeking a determination that Cohen's producing agreement in connection with the Picture (the "Cohen Agreement" or "Agreement") was not executory as of the date of the Debtors' bankruptcy petition (the "Petition Date"), and therefore could be "sold" to Spyglass without being assumed and assigned under Section 365 (the "Cohen Litigation").

Through the Cohen Litigation, Spyglass sought both to (1) avoid the obligation to cure the Debtors' defaults under the Cohen Agreement by paying Cohen approximately $400,000 owed in contingent compensation, and (2) to use the court's determination as to whether the Cohen Agreement was executory as a bellwether for the agreements of the other Appellants and other talent parties that are not parties to this appeal.

Under the so-called "Countryman Test," as applied by the Bankruptcy and District Courts in this case, "[a]n executory contract is 'a contract under which the obligation of both the bankrupt and the other party to the contract are so far

unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.'" *General DataComm Industries, Inc.* (*In re General DataComm Industries, Inc. v. Arcara*), 407 F.3d 616, 627 (3d Cir. 2005) ("*General DataComm*") (citing *Sharon Steel Corp. v. National Fuel Gas Distribution Corp.*, 872 F.2d 36, 39 (3d Cir. 1989)).

"The time for testing whether there are material unperformed obligations on both sides is when the bankruptcy petition is filed." *Id.* at 623 (quoting *In re Columbia Gas Sys. Inc.*, 50 F.3d 233, 240 (3d Cir. 1995)). To conduct this determination, courts look to general contract-law principles under the relevant state law. *See id.* at 623 (citing *In re Columbia Gas Sys. Inc.*, 50 F.3d at 239 n.10).

It is undisputed that the Cohen Agreement is governed by New York law. A2336 (Cohen Agreement ¶ 23), A18 (DCT Op. 13 n.12).

"Thus, the issue before the [courts] was whether, as of the Petition Date and under New York law, the Cohen Agreement contained obligations for the Debtors and Cohen to each perform such that, if left unperformed, the non-performance would constitute a material breach of the contract as a whole." A18-A19 (DCT Op. 13-14).

The day after filing its Complaint, Spyglass moved for immediate summary judgment, asserting that the Cohen Agreement was not executory and thus could be purchased by Spyglass without being assumed and assigned under Section 365.

A2294.

Spyglass presented no evidence regarding the materiality (or purported lack thereof) of the continuing obligations under the Cohen Agreement in support of its summary judgment motion. Indeed, the only evidence presented by Spyglass in support of summary judgment was the oral and written testimony of Mr. Irwin Reiter, the former executive vice president for accounting and financial reporting at TWC during the time period in question who then held the same position at Spyglass. None of Mr. Reiter's testimony, however, addressed the materiality of the terms of the Cohen Agreement.

Instead, Mr. Reiter testified regarding the purported chain of title for the Cohen Agreement from SLP, the original contracting party, to TWC. A2198-A2200, A2028-A2029. Specifically, Mr. Reiter testified that SLP transferred its rights pertaining to the Picture to SLPTWC Films, LLC ("SLPTWC") through a Production Services Agreement, dated September 15, 2011. *Id.* Because TWC was the sole member of SLPTWC, Mr. Reiter concluded that when SLPTWC dissolved, any rights it had in the Cohen Agreement transferred to TWC. *Id.*

### C. **The Cohen Agreement**

Prior to the Petition Date, on or about September 21, 2011, Cohen entered into a Producing Services Agreement (*i.e.*, the Cohen Agreement) with non-debtor SLP Films. A2328-2382 (Cohen Agreement). The Cohen Agreement states that the

"engagement and services hereunder in connection with the [Picture] shall be deemed works-made-for-hire specially ordered or commissioned by [SLP Films] in connection with a motion picture and/or audiovisual work." A2331 (*Id.* ¶ 9).

Pursuant to that agreement, Cohen agreed to, among other things, produce the Picture. A2329-A2330 (*Id.* ¶¶ 4-7). SLP agreed to, among other things, pay Cohen both fixed compensation (payable through the making of the Picture) and contingent compensation (payable after the making and release of the Picture). A2328-2329 (*Id.* ¶¶ 2-3).

The Cohen Agreement expressly provides that Cohen's failure to comply with ***any*** provision of the Agreement — even after the Picture was produced — would excuse SLP Films' obligation to pay any contingent compensation. Specifically, paragraph three (3) provides:

> Contingent Compensation: If the Picture is produced with [Cohen] as the producer thereof and [Cohen] fully perform[s] all required services and obligations hereunder and in relation to the Picture, **and [is] not otherwise in breach or default hereof**, [Cohen] shall be entitled to receive the following "Contingent Compensation":

A2329 (*id.* ¶ 3 (emphasis added)).

Any breach by Cohen also excused SLP from performing other ongoing obligations to Cohen. *See, e.g.*, A2329 (*id.* at ¶ 4 ("Company shall accord [Cohen] 'Produced by' credit in second position" provided Cohen does not breach agreement)); A2332-2333 (*id.* ¶ 13 (Cohen has right of first opportunity provided

Cohen does not breach agreement)).

It is undisputed that the Cohen Agreement includes numerous obligations that survive the making and release of the Picture. For example, it contains myriad provisions relating to the ability of SLP Films (and, subsequently, TWC) to distribute and exploit the Picture following its production. Specifically, the Cohen Agreement contains a continuing obligation by Cohen to refrain from seeking to "enjoin or restrain the exhibition, distribution, advertising, exploitation, or marketing of the Picture and/or any rights therein." A2334 (*id.* ¶ 20). It further imposes ongoing indemnification obligations on Cohen, A2334 (*id.* ¶ 17), and prohibits Cohen from assigning his rights or obligations to any third party, *id*.

The Cohen Agreement further requires Cohen to provide TWC with a right of first refusal if Cohen seeks to sell or assign his right to receive contingent compensation, and requires Cohen to comply with a set of procedures in connection with TWC's right of first refusal. Specifically, paragraph 3.5 of Schedule 1, governing the terms of Cohen's contingent compensation, provides in relevant part:

> TWC shall have the right of first refusal with respect to any proposed assignment of [Cohen's] right to receive Contingent Bonus hereunder upon equivalent terms (to the extent economically matchable) offered to [Cohen] by a bona fide third party. [Cohen] shall notify TWC of the terms of any such proposed assignment and TWC shall have 7 business days within which to elect to accept terms. [Cohen] shall make no change in such terms which are adverse to [Cohen's] interest without giving TWC the opportunity to accept such changed terms. If TWC does not elect to accept such terms, then [Cohen] shall be free to accept the proposed terms of assignment from such bona fide third party … .

A2350 (*id.* ¶ 3.5 B).

Similarly, the Cohen Agreement provides Cohen a right of first refusal in connection with subsequent productions relating to the Picture, and imposes on Cohen a separate set of procedures for exercising that right. Specifically, the Cohen Agreement provides that, for a period of seven years after the release of the Picture (*i.e.*, until November 2019), Cohen had the right of first opportunity to produce a sequel, prequel, or other production based on the Picture. A2332-A2333 (*id.* ¶ 13). In that instance, Cohen is granted thirty (30) business days "following Company's notice to [Cohen] of the commencement of negotiations for [Cohen's] services" to reach an agreement on the terms of such subsequent production, provided that "the financial terms and conditions for the engagement of Cohen shall be no less favorable than those set forth in [the Cohen] agreement." *Id.* If no agreement is reached between the parties within that time, "then Company shall have the right to engage alternative producers and shall have no further obligation" to Cohen with respect to such subsequent production." *Id.*

D. **<u>The Talent Parties' Motion to Clarify</u>**

On November 5, 2018, the Talent Parties filed a motion for an order clarifying, among other things, whether TWC owned SLP's original rights under their respective agreements, including the Cohen Agreement, such that those rights could be transferred through the bankruptcy sale to Spyglass. A894. To that end, the

Talent Parties challenged whether those rights passed automatically from SLPTWC to TWC upon the former's dissolution.

Because that issue was also a necessary factual prerequisite to evaluating Spyglass's Motion for Summary Judgment, the Bankruptcy Court consolidated its consideration of the two motions, holding a single hearing and issuing a single order addressing both motions. A2144 (Bkry Tr. 11: 14-17), A2145 (Bkry Tr. 12: 17-24), A2148 (Bkry Tr. 15: 21) – A2149 (Bkry Tr. 16: 2), A2272 - 2275 (Bkcy. Order).

### E. **The Bankruptcy Court Ignored Binding Precedent And Fundamental Summary Judgment Standards To Find The Cohen Agreement Is Not Executory**

At the January 14, 2019, hearing on its Summary Judgment Motion, Spyglass offered only the Reiter Declarations and the Mr. Reiter's live testimony into evidence — none of which addressed the materiality of the terms of the Cohen Agreement. A1379-1385 (Reiter Supplemental Declaration), A2184-A2238 (Reiter Testimony), A2323-A2326 (Reiter Declaration). At the close of the hearing, the Bankruptcy Court issued a bench ruling, which granted Spyglass's Summary Judgment Motion, holding that the Cohen Agreement was not an executory contract as of March 19, 2018, the Petition Date. A2267 (Bkry Tr. 134: 3) - A2268 (Bkry Tr. 135: 19) (bench ruling), A2272 – A2275 (Bkcy. Order).

The Bankruptcy Court first applied the Countryman Test[3] to determine whether the Cohen Agreement was executory. Under the Countryman Test:

> [An executory contract is] a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other.
>
> Thus, unless both parties have unperformed obligations that would constitute a material breach if not performed, the contract is not executory under § 365. When it is the nonbankrupt party who has substantially performed so that its failure to complete performance would not constitute a material breach excusing performance of the debtor, the nonbankrupt party is relegated to the position of a general creditor of the bankrupt estate. The time for testing whether there are material unperformed obligations on both sides is when the bankruptcy petition is filed.

*In re Columbia Gas Sys. Inc.*, 50 F.3d at 239-40 (brackets in original; internal citations, quotation marks, and footnote omitted).

Then, without having been presented with *any* such evidence, the Bankruptcy Court determined that although "ancillary performance is due on both sides," "the primary purpose of a work for hire contract in the industry is the completion of the project." A2267. Thus, the Bankruptcy Court held, any terms remaining after the completion of the project were inherently immaterial.[4]

---

[3] *See* Vern Countryman, <u>Executory Contracts in Bankruptcy: Part I</u>, 57 Minn. L. Rev. 439 (1973).

[4] The Bankruptcy Court further held that Spyglass is obligated to perform all post-sale closing obligations under the Talent Parties' agreements regardless of whether those agreements are sold or assumed and assigned pursuant to Section 365. A2269-A2270 (Bkry Tr. 136: 10 - 137:13); A7 (DCT Op. 2).

In reaching this conclusion, the Bankruptcy Court summarily rejected the Talent Parties' assertion that under binding Third Circuit precedent, including *General DataComm*, 407 F.3d at 623, the Cohen Agreement is executory on its face, without ever mentioning, much less analyzing, those decisions. *See* A2266-A2270 (Bkry Tr. 133-137).

Instead, without considering *any* evidence as to the materiality of the continuing terms of the Cohen Agreement — as Spyglass submitted none — the Bankruptcy Court concluded that because the purported primary purposes of the Agreement — the making of the Picture — was completed, all remaining terms were immaterial as a matter of law. A2266-A2267 (Bkry. Tr. 133:15-17; 134:6-8, 18-23).

Similarly, the Bankruptcy Court concluded — without any *evidence* establishing the transfer of the Cohen Agreement from SLP Films to TWC — that the transfer occurred automatically as a matter of New York law[5] upon SLP's dissolution, because TWC was SLPTWC's[6] sole member. A2269 (Bkry Tr. 136: 4-6). Specifically, the only evidence presented at the hearing on Spyglass's Summary

---

[5] Notably, SLPTWC was a Delaware Corporation, and thus Delaware law, not New York law, governs the alleged transfer of Cohen Agreement upon the dissolution of the corporation. *See infra* Argument Section B(3).

[6] It is undisputed that pursuant to the Cohen Agreement, SLP Films owned the rights pertaining to the film. A2331 (Cohen Agreement, § 9). Those rights were transferred from SLP Films to SLPTWC (of which TWC was the sole member) pursuant to a Production Services Agreement dated September 15, 2011. A2090 – A2104.

Judgment motion and the Talent Parties' Motion to Clarify included two declarations of Mr. Reiter — one that accompanied the motion for summary judgment (A2323-A2326), and a "supplemental" declaration filed seven days prior to the hearing (A2024-A2030) — along with Mr. Reiter's oral testimony (A2184 -2238). As Mr. Reiter testified at the hearing, however, he was not the custodian of records and he could provide no documentation evidencing the transfer of the Cohen Agreement to any of the Debtors. A2202 (Trans. 69:21-24). Nevertheless, the Bankruptcy Court held that such evidence was unnecessary for it to infer that the transfer occurred, and thereby conclude that the Cohen Agreement belonged to the Debtors at the time of its purported assumption by, or sale to, Spyglass. A2268-A2269 (Trans. 135:16 – 136:6).

Ultimately, the Bankruptcy Court entered an Order memorializing its oral ruling on January 23, 2019. A2272-A2275. The Talent Parties timely appealed on February 5, 2019, and simultaneously sought direct certification of the appeal to the United States Court of Appeals for the Third Circuit. A2276.

The Bankruptcy Court certified its order for direct appeal to this Court, but this Court denied the petition for certification on May 3, 2019.

### F. <u>**The District Court Affirmed, Without Considering Whether The Cohen Agreement Was Executory On Its Face Under *General DataComm***</u>

The District Court affirmed the decision of the Bankruptcy Court, largely adopting its reasoning. A5-A34.

First, the District Court held that the Bankruptcy Court was correct to apply the Countryman Test, *in conjunction with New York's substantial performance doctrine*, to determine whether the Cohen Agreement was executory. A18 (DCT Op. 13 & n.11).

According to the District Court, New York's "substantial performance doctrine is a reality-based approach to determining whether a contract is executory for purposes of section 365 of the Bankruptcy Code." Specifically:

> [U]nder New York law, only a breach in a contract which substantially defeats the purpose of that contract can be grounds for rescission. The non-breaching party will be discharged from the further performance of his obligations under the contract *when the breach goes to the root of the contract*.

A19 (DCT Op at 14) (quoting *In re Exide Technologies*, 607 F.3d 957 (3d Cir. 2010) (italics and brackets in original)).

In short, under the District Court's approach, "when a party has substantially performed the main purpose of entering into the contract, the non-breaching party will not be excused from performance," and the agreement is not executory. A19 (DCT Op. 14).

Here, the District Court concluded "the primary purpose, or 'root' of the Cohen Agreement, which is self-described as a work-for-hire agreement, was the production of the [Picture] and the transfer of rights of authorship such that TWC could exploit such rights without concerns about claims from [Cohen]." A20 (DCT Op. 15). Thus, the "material obligations under the Cohen Agreement were performed in 2011 and 2012 — in 2011, when the intellectual property and other rights to and under the [Picture] were transferred to the Debtors at the time the parties executed the Cohen Agreement, and in 2012 when the [Picture] was produced and released." *Id.*

As a result, the District Court concluded, "after the [Picture] was released, the only obligations remaining under the Cohen Agreement were ancillary and could not be material." *Id.* Effectively, the District Court concluded, as did the Bankruptcy Court, that the release of the Picture, by itself, rendered the Cohen Agreement non-executory.

Without mentioning, much less considering, this Court's binding decision in *General DataComm*, the District Court rejected (in a single paragraph) the Talent Parties' assertion that "the substantial performance doctrine is inapplicable to an agreement like the Cohen Agreement which, 'by its terms … requires full performance.'" A24 (DCT Op. 19).

Instead, the District Court relegated *General DataComm* to a footnote of

string cites in a different section of its decision, in which it dismissed the relevance of cases not involving purported "work-for-hire agreements." *See* A28 (DCT Op 23 n.14 (dismissing *General DataComm* because it involved "unperformed employee benefit plans (not work-for-hire agreements)").)

The District Court never acknowledged, much less analyzed, this Court's holding in *General DataComm* that materiality is determined by the intent of the contracting parties, and so if those parties specify in the contract that a term is material, that determination controls. *See General DataComm*, 407 F.3d at 623-24. Nor did the District Court explain how the subject matter of the contract at issue in *General DataComm* impacted this Court's holding in that case — it did not.

The District Court similarly rejected without substantial analysis, the Talent Parties' challenge to the Bankruptcy Court's granting of summary judgment without considering *any evidence* regarding the materiality of the remaining Cohen Agreement provisions at issue. Instead, the District Court held: "Although 'the issue of whether a party has substantially performed is usually a question of fact,' it may be decided as a matter of law 'where inferences are certain.' This is the case here. As discussed above, the inferences here are certain that the parties have substantially performed, and the Bankruptcy Court appropriately adjudicated the non-executory nature of the Cohen Agreement based upon the record." A26 (DCT Op. 21) (citations omitted).

Thus, the District Court, like the Bankruptcy Court, substituted its own assessment of the Cohen Agreement's purported "primary purpose," without considering *any* evidence, and based on that assessment alone, concluded as a matter of fact *on summary judgment* that none of the continuing terms of the Agreement were material.

The District Court further adopted the Bankruptcy Court's conclusion that the Cohen Agreement was automatically transferred to TWC upon SLP's dissolution as a matter of New York law. A28-A31 (DCT Op. 23-26). The District Court then declined to "disturb the Bankruptcy Court's conclusion or inference that rights under the Cohen Agreement automatically transferred upon SLPTWC's dissolution to its sole member (TWC) because, even assuming that the Bankruptcy Court should have applied Delaware law instead of New York law, the result would be the same." A30-A31 (DCT Op. 25-26).

The Talent Parties timely appealed. A1.

## SUMMARY OF THE ARGUMENT

The Bankruptcy Court erred as a matter of law by (1) applying the wrong legal standards to determine whether contract terms are material for purposes of determining whether a contract is executory within the meaning of Section 365 of the Bankruptcy Code, and (2) violating bedrock principles of summary judgment by determining that none of the ongoing obligations under the Cohen Agreement were

material without considering *any* evidence.

First, the Bankruptcy Court erred in granting summary judgment in Spyglass's favor because under this Court's binding precedent — largely ignored by both the Bankruptcy Court and District Court — the Cohen Agreement is executory on its face because it expressly provides that Cohen's breach of *any* provision of the Cohen Agreement excuses TWC's indisputably material obligation to pay Cohen contingent compensation. *See General DataComm*, 407 F.3d at 623-24. Therefore, on the face of the contract, material obligations existed for both parties on the Petition Date and the Cohen Agreement was executory. Thus, New York's Substantial Performance doctrine simply did not apply.

Second, the Bankruptcy Court compounded this error by failing to follow the bedrock standards for summary judgement. Even if the Substantial Performance doctrine applied here — it does not — as the moving party, Spyglass was required to submit evidence sufficient to establish the absence of a disputed material fact as to its assertion that the Cohen Agreement is not executory. Thus, Spyglass was required to submit evidence establishing that the continuing terms of the Cohen Agreement were immaterial as of the Petition Date. Spyglass failed to do so. Indeed, Spyglass submitted *no* evidence regarding materiality. Moreover, it filed its motion for summary judgment one day after filing its complaint, thereby preventing the Talent Parties from conducting *any* discovery on the materiality of those terms, or

anything else.

The Bankruptcy Court thus erred by substituting its own opinions regarding the primary purpose of the Cohen Agreement and the materiality of the its terms for the absence of *any* such evidence. So, even if the Cohen Agreement is not executory on its face — it is — the Bankruptcy Court's decision (and the District Court decision affirming it) should be reversed, discovery should be permitted, and (at minimum) an evidentiary hearing should be held to determine whether the ongoing obligations under the Cohen Agreement were material as to both parties (and thus, the Cohen Agreement was executory) as of the Petition Date.

## STANDARD OF REVIEW

A grant of summary judgment is reviewed *de novo*, using the same standard applied by the bankruptcy court. *See Robeson Indus. Corp. v. Hartford Accident & Indem. Co. (In re Robeson Indus. Corp.)*, 178 F.3d 160, 164 (3d Cir. 1999).

Similarly, the legal interpretation of a contract is also reviewed *de novo*. *See Viera v. Life Ins. Co. of North America*, 642 F.3d 407, 413 (3d Cir. 2011); *Heasley v. Belden & Blake Corp.*, 2 F.3d 1249, 1254 (3d Cir. 1993).

## ARGUMENT

The Bankruptcy Court erred as a matter of law by (1) applying the wrong legal standards to determine whether a contract is executory, and (2) violating bedrock principles of summary judgment to find for the moving party on disputed issues of

material fact without requiring the submission of *any* evidence.

### A. **<u>The Bankruptcy Court Erred In Granting Summary Judgment For Spyglass Because The Cohen Agreement Is Executory On Its Face</u>**

The Bankruptcy Court erred in granting summary judgment in favor of Spyglass because the Cohen Agreement is executory on its face. Thus, New York's Substantial Performance doctrine does not apply.

As this Court established in *General DataComm*, a contract is executory on its face when its terms expressly provide that material obligations exist as to both parties. 407 F.3d at 623 n.12. Thus, where the contract "expressly defines certain acts or events as constituting material breaches of the contract," the court "need not look beyond the [contract] itself to make that determination." *Id.* at 623.

In *General DataComm*, the employer-debtor (DataComm) asserted that its Benefit Plan was not executory for purposes of Section 365 as to certain terminated executives because none of the terms binding the executives after their termination were material. Those continuing terms required the executives "to not compete; to maintain confidentiality; to refrain from instituting litigation; to agree to participate in litigation initiated by DataComm; and to refrain from negative publicity." *Id.* at 623.

This Court disagreed.

Declining to evaluate the materiality of the continuing terms under otherwise

applicable state law standards, this Court held that the materiality of the terms was established by the contract itself, which provided:

> [i]n the event in the sole judgment of the Board of Directors of the Corporation, an Eligible Executive or his spouse directly or indirectly [fails to comply with any of the covenants set forth in Paragraph 6], then in any such event, the Board of Directors may terminate the status of such person as an Eligible Executive hereunder and all benefits hereunder for such Eligible Employee and his or her spouse shall terminate.

*Id.* at 623 (brackets in original).

"Thus, if an Eligible Executive breached one of those provisions, it would excuse the future performance of DataComm. By contractual definition, therefore, such obligations are material." *Id.* at 623-24 (citations omitted).

This Court explicitly rejected the assertion of its "dissenting colleague," that the continuing terms were not material, and thus the Benefit Plan was not executory, under Delaware law and the Restatement (Second) of Contracts § 241:

> Our dissenting colleague has discussed the issue of "materiality" at length, but he has made no reference to the very terms of the Benefit Plan itself. It is that Plan, as we have stated, which defines the "materiality" of the Appellees' obligations — it explicitly provides that the failure of an Eligible Executive to comply with the covenants of Paragraph 6 excuses the future performance of DataComm. We are satisfied that the parties intended the provisions of Paragraph 6 to be material. No further analysis is therefore required. As such, the dissenting opinion's analysis, while perhaps thorough, substitutes its own views on materiality for what the parties explicitly and formally agreed to as being "material" and vital to their contract.

*Id.* at 623 n.12.

This Court was "thus satisfied that the Appellees' obligations are material, and that the Benefit Plan [wa]s an executory contract." *Id.* at 624.

The U.S. Bankruptcy Court for the Southern District of New York recently reached a similar conclusion in *In re Hawker Beechcraft, Inc.*, 486 B.R. 264 (Bankr. S.D.N.Y. 2013). There, the court noted that "[o]rdinarily, the materiality of [the parties'] promises would be a question of fact requiring a trial," but held that "if the parties contractually agree that some or all of the terms are sufficiently important to discharge any further obligations imposed on the party aggrieved by a breach, their intent will govern." *Id.* at 278 (collecting cases). Because "the parties contractually agreed that the buyer's material breach of any term, even an immaterial term, would allow Hawker to terminate the [contracts] and sue for specific performance," the court concluded, "the [contracts] are executory." *Id.* at 278-79. *See also* 23 RICHARD A. LORD, WILLISTON ON CONTRACTS § 63:3 (4th ed. 2002) ("Where the contract itself is clear in making a certain event a material breach of that contract, a court must ordinarily respect that contractual provision."); *c.f. Avant Guard Props, LLC v. New York City Indus. Dev. Agency*, 2015 WL 7070066, at *5 (N.Y. Sup. Ct. Jan 7, 2015) ("The substantial performance rule does not apply here, where the parties have made it clear by the terms of the Lease that only complete

performance will satisfy the agreement.”).[7]

Similar to the contracts found to be executory by their express terms in *General DataComm* and *In re Hawker Beechcraft, Inc*, the Cohen Agreement expressly provides that a breach by Cohen of ***any*** of its terms will excuse the performance of SLP Films/TWC. A2329, A2332-A2333 (Cohen Agreement ¶¶ 3, 4, 13).

Of course, from Cohen’s perspective, the most important remaining material obligation of SLP Films/TWC is the continuing obligation to pay Cohen contingent compensation. *See* A2329 (Cohen Agreement ¶ 3). Because, as Spyglass admits,[8] SLP Films/TWC has the right to suspend performance of that material obligation if Cohen is in “breach or default” of ***any*** of his obligations under the Agreement,

[7] *See also, C.F.*, *Am. Exp. Bank Ltd. v. Uniroyal, Inc.*, 164 A.D.2d 275, 277, 562 N.Y.S.2d 613 (1990) (“In interpreting a contract, the intent of the parties. A contract should be construed so as to give full meaning and effect to all of its provisions. Words and phrases are given their plain meaning. Rather than rewrite an unambiguous agreement, a court should enforce the plain meaning of that agreement. Where the intent of the parties can be determined from the face of the agreement, interpretation is a matter of law and the case is ripe for summary judgment. On the other hand, if it is necessary to refer to extrinsic facts, which may be in conflict, to determine the intent of the parties, there is a question of fact, and summary judgment should be denied.”) (internal citations omitted).

[8] Spyglass conceded this point in the District Court, asserting “[T]he compensation and other substantive provisions of the Cohen Agreement require[] that the Cohen Parties ‘**fully performed all services and obligations**’ under the Cohen Agreement, **and not be ‘in breach or default**’ of the Cohen Agreement.” A145 (Spyglass District Court Answering Brief at 19).

Cohen's obligations are material as a matter of law, and the agreement is executory on its face.

Remarkably, both the Bankruptcy Court and District Court largely ignored this Court's decision in *General DataComm*. Indeed, District Court never acknowledged, much less distinguished, this Court's holding that materiality is determined by the intent of the contracting parties, and so if those parties specify in the contract that a term is material, that determination controls and inconsistent doctrines of state law are inapplicable. *See General DataComm*, 407 F.3d at 623.

Instead, the District Court relegated *General DataComm* to a footnote of string cites in a different section of its decision, in which it dismissed the relevance of cases not involving purported "work-for-hire agreements." *See* A28 (DCT Op. 23 n.14) (dismissing *General DataComm* because it involved "unperformed employee benefit plans (not work-for-hire agreements)"). But the District Court never explained how the subject matter of the contract at issue in *General DataComm* impacted this Court's holding in that case — it did not.

To be sure, each of the contracts in *DataComm* and *In re Hawker Beechcraft, Inc.* involved different subjects, but neither of those decisions turned in any way on the *subject matter* of the contracts involved. Instead, those cases hold that as a matter of law, a contract is executory on its face when its express terms provide that the continuing terms are material.

Here, continuing material obligations existed as to both parties on the face of the Cohen Agreement, and thus the Agreement was executory on the Petition Date. As to SLP/TWC, it is undisputed that the obligation to pay contingent compensation was an ongoing material term on the Petition Date. As to Cohen, all continuing obligations were material as *any* breach by Cohen of *any* term excused SLP/TWC's material obligation to pay contingent compensation. Thus, as of the Petition Date, material obligations existed as to both parties and the Cohen Agreement was executory as a matter of law.

The Bankruptcy Court and District Court thus erred by substituting their materiality determinations under New York's Substantial Performance Doctrine for the express materiality determination included in the Cohen Agreement itself.

The Bankruptcy Court's order awarding summary judgment to Spyglass should therefore be reversed.

### B. **The Bankruptcy Court Erred In Granting Summary Judgment Under The Substantial Performance Doctrine Because Spyglass Presented No Evidence To Establish That The Continuing Terms Are Not Material.**

As detailed *supra*, the Substantial Performance doctrine simply does not apply here because the Cohen Agreement is executory on its face.

But even if that doctrine did apply, the Bankruptcy Court erred by granting summary judgment in favor of Spyglass on the issue of whether the Cohen Agreement was executory on the Petition Date, without requiring or receiving *any*

supporting evidence on the factual issues of ownership of the Cohen Agreement and the materiality of the Agreement's continuing terms, as is required under foundational principles of summary judgment and New York law.

### 1. Summary Judgment May Not Be Awarded Unless The Movant Establishes There Is No Genuine Dispute Regarding Any Material Fact.

A motion for summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 743 (3d Cir. 1996) (quoting *Horowitz v. Federal Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995)).

As the moving party, Spyglass thus bore the burden of submitting evidence to establish that there was no genuine issue of a material fact necessary to the legal issue on which it sought summary judgment — that the Cohen Agreement was not executory as of the Petition Date — and that it was entitled to relief. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In evaluating such evidence, all reasonable inferences must be drawn in favor of Cohen, the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Here, because the factual issues of whether (1) the Debtor owned the rights under the Cohen Agreement that it sought to transfer to Spyglass, and (2) both parties had material continuing obligations under the Cohen Agreement as of the Petition Date, were prerequisites to the Bankruptcy Court's legal determination as to whether the Cohen Agreement was an executory contract subject to transfer through the bankruptcy proceeding, Spyglass bore the burden of providing *evidence* to establish both the purported ownership of the Agreement and the immateriality of its continuing obligations.

Spyglass, however, provided ***no factual*** evidence regarding the purported transfer of title from SLPTWC to TWC, and ***no*** evidence regarding the materiality of the ongoing obligations under the Cohen Agreement, much less uncontroverted evidence, and thus summary judgment should have been summarily denied.

### 2. Materiality Of Contract Terms Is A Factual Determination Generally Not Appropriate For Summary Judgment Under New York Law

Even if the Cohen Agreement was not executory on its face — it is — and Spyglass had submitted some evidence as to the immateriality of the ongoing obligations under that Agreement — it did not — summary judgment still should have been denied because this complicated factual determination is not appropriate for summary judgment as a matter of New York law.

Specifically, as discussed above, the central question under the Countryman

definition of executory contracts is whether the remaining obligations under the Cohen Agreement are "material." If material obligations exist as to both parties, the Cohen Agreement is executory.

Under New York law, which governs the Cohen Agreement,[9] "the materiality of a contractual provision is a question of fact." *Manhattan Life Ins. Co. v. Prussian Life Ins. Co.*, 296 F. 39, 42 (2d Cir. 1924); *see also Teachers Ins. and Annuity Ass'n of Am. v. Coaxial Commc'ns of Cent. Ohio, Inc.*, 807 F. Supp. 1155, 1160 (S.D.N.Y. 1992) ("[I]t is for the jury to determine materiality with respect to any alleged breach."); *F. Garofalo Elec. Co. v. New York University*, 300 A.D.2d 186, 189, 754 N.Y.S.2d 227 (1st Dep't 2002) ("The question of whether there has been substantial performance — or a breach — is to be determined, whenever there is any doubt, by the trier of fact.") (citations omitted); *Mega Grp. Inc. v. Halton*, 290 A.D.2d 673, 674-75, 736 N.Y.S.2d 444 (3d Dep't 2002) ("Whether promises in a contract are mutually dependent upon each other such that a failure to act by one party excuses nonperformance by the other ordinarily is a question of fact.") (citations omitted).

New York courts typically analyze materiality using the elements set forth in the Restatement (Second) of Contracts. *See, e.g.*, *Bear, Stearns Funding, Inc. v. Interface Grp. -- Nev., Inc.*, 361 F. Supp. 2d 283, 296 (S.D.N.Y. 2005). "The

---

[9] A2336 (Cohen Agreement ¶ 23 ("This Agreement shall be governed by New York law …").

Restatement … provides five elements to guide the determination of whether a failure to render performance constitutes a material breach:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
>
> (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing."

*Id.* at 296 (quoting Restatement (Second) of Contracts § 241).

Precisely because determining the materiality of a contract provision requires this fact-intensive analysis, courts have repeatedly held it is not appropriate for summary disposition except it in the extreme case in which materiality is clear on the face of the contract:

> [A]lthough it is not impossible, determining whether a breach is material on summary judgment is inherently problematic where, as here, the materiality analysis may well turn on subjective assessments as to the state of mind of the respective parties. … Here, the issue of the materiality of a breach under the *Restatement*'s analytical framework presents such a situation, as the analysis depends greatly on an evaluation of why the parties chose to act as they did. … The determination of 'materiality' in a factual setting such as this is best made after trial.

*Norfolk S. Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 96 (3d Cir. 2008). *See also In re Hawker Beechcraft*, 486 B.R. at 278 ("Ordinarily, the materiality of [contractual] promises would be a question of fact requiring a trial. … However, if the parties contractually agree that some or all of the terms are sufficiently important to discharge any further obligations imposed on the party aggrieved by a breach, their intent will govern.") (citations omitted); *Bear, Stearns Funding, Inc.*, 361 F. Supp. 2d at 296 ("The application of each of these elements requires fact-intensive analysis not appropriate for summary disposition.").

Thus, once the Bankruptcy Court determined that both parties had continuing obligations under the Cohen Agreement, the court should have denied summary judgment to provide both parties the opportunity to conduct discovery regarding the materiality of those terms, and to present such evidence to the trier of fact. Instead, the Bankruptcy Court erred by substituting its view of materiality for Spyglass's failure to provide any relevant evidence.

### 3. Both The Bankruptcy Court And District Court Failed To Perform The Factual Analysis Required Under New York Law And Foundational Principles Of Summary Judgment

The Bankruptcy Court and District Court appropriately found that both Cohen and TWC had continuing obligations under the Cohen Agreement. A2269-A2270 (Bkcy. Tr. 136:10 – 137:13), A13 (DCT Op. 8), A20-21 (DCT Op. 15-16).

Thus, the courts were, at minimum, required to perform the evidence-based,

factual analysis proscribed under New York law to determine the materiality (or immateriality) of the Agreement's continuing obligations as a necessary *factual* prerequisite for the *legal* conclusion regarding whether the Agreement was executory on the Petition Date. Neither the Bankruptcy Court nor the District Court performed that analysis. Nor could they, as Spyglass failed to submit *any* evidence, much less uncontroverted evidence, regarding the purported immateriality of the continuing terms.

Indeed, the only evidence submitted in support of Spyglass's motion for summary judgment came from Mr. Reiter, and focused exclusively on attempting to establish the chain of title for the Cohen Agreement to TWC. *See* A1379-1385 (Reiter Supplemental Declaration), A2184-A2238 (Reiter Testimony), A2323-A2326 (Reiter Declaration). But even so, as detailed above, Mr. Reiter presented no evidence establishing the transfer of rights under the Cohen Agreement from SLPTWC to TWC. Both the Bankruptcy Court and the District Court excused this evidentiary failing, however, by concluding that such transfer occurred automatically under New York law when SLPTWC dissolved because TWC was the sole member of SLPTWC. This conclusion was legal error because SLPTWC was a Delaware Corporation, A1445, and thus the transfer of its assets upon dissolution was a question of Delaware law, not New York law.

Under Delaware law, assets of an LLC that is winding up are distributed pursuant to a specified priority scheme. *See generally* Del. Code Ann. tit. 6, §18-804 (2019). The winding up of the LLC and the distribution of its assets must be accomplished by someone; it is not automatic or self-executing. *See* Del. Code Ann. tit. 6, § 18-803(a) (winding up of LLC may be accomplished by a manager, the members, a person approved by the majority of the members, or the Court of Chancery); § 18-803(b) (granting authorities to the person winding up the LLC's affairs, including the distribution of any remaining assets to the members). Accordingly, Spyglass's evidentiary burden required it to demonstrate that prior to SLPTWC's cancellation, its assets actually were transferred to its sole member, TWC. Spyglass failed to meet that burden, and the Bankruptcy Court erred by inferring such a transfer as a matter of New York, rather than Delaware, law.

The Bankruptcy Court, and subsequently the District Court, similarly erred by excusing Spyglass's failure to present any evidence regarding the materiality of the continuing terms of the Cohen Agreement. Indeed, Mr. Reiter offered *no* testimony regarding whether any of the continuing terms in the Cohen Agreement were material, and Spyglass has never asserted otherwise.

Remarkably, both the Bankruptcy Court and District court ignored Spyglass's fundamental evidentiary failing, and New York law, choosing instead to substitute their own views on the materiality of terms within so-called "participation

agreements" in the film industry.

First, the District Court decided, without any evidence, that because the Cohen Agreement was a "work-for-hire" agreement, its primary purpose was the production of the Film:

> [T]he primary purpose, or 'root' of the Cohen Agreement, which is self-described as a work-for-hire agreement, was the production of the film and the transfer of rights of authorship such that TWC could exploit such rights without concerns about claims from the Cohen Parties. … After the film was released, the only obligations remaining under the Cohen Agreement were ancillary and could not be material.

A20 (DCT Op. 15).

Then the District Court decided that although substantial performance is generally a question of fact, here, the mere fact that the Cohen Agreement was a "work-for-hire" agreement meant that no evidence of materiality was required:

> Although the issue of whether a party has substantially performed is usually a question of fact, it may be decided as a matter of law where inferences are certain. This is the case here. As discussed above, the inferences here are certain that the parties have substantially performed and the Bankruptcy Court appropriately adjudicated the non-executory nature of the Cohen Agreement based upon the record."

A26 (DCT Op. 21) (internal citations and quotation marks omitted).

The District Court based this conclusion on two decisions in which other courts found purportedly similar contracts to be nonexecutory after the respective "projects" (the production of a television films and the publishing of books) were completed. *See Otto Preminger Films, Ltd. v. Qintex Entertainment, Inc.* (*In re*

*Qintex Entertainment, Inc.*), 950 F.2d 1492 (9th Cir. 1991); *In re Stein & Day, Inc.*, 81 B.R. 263 (Bankr. S.D.N.Y. 1988); *see also* A21-A24 (DCT Op. 16-19).

But regardless of whether those cases were rightly decided on the facts presented, unlike here, neither of those cases involved a contract that expressly provided that the breach of *any* term by the "talent" party excused performance of a material term (payment) by the "employing" party, and neither involved a motion for summary judgment.

On a motion for summary judgment, neither the Bankruptcy Court nor the District Court was permitted to substitute its own determination of materiality for the consideration of *actual evidence* regarding whether such terms were material to the parties to *this* Agreement.

Of course, the burden to submit such evidence fell to Spyglass as the moving party. By failing to submit such evidence, Spyglass failed to carry its burden and summary judgment should have been summarily denied.[10] *See Celotex Corp.*, 477 U.S. at 323.

---

[10] Notably, though Cohen had no such burden, he was effectively prevented from submitting evidence in support of his contention that the continuing terms in the Cohen Agreement were material because Spyglass filed its motion for summary judgment the day after filing its Complaint, thereby foreclosing any opportunity for discovery.

Spyglass's evidentiary failure is not surprising. Had the Bankruptcy Court received evidence on the materiality of those terms, it could have learned that they were not only material to these parties, but are standard material terms within the film industry. So much so that it is unlikely that films of this scale would ever be produced without these terms.

Moreover, Spyglass's position is illogical as there would be no reason for Spyglass to pursue the Cohen Agreement had Cohen already "substantially performed" all that was required of him. Indeed, Spyglass's insistence on acquiring the Cohen Agreement (and the continuing obligations imposed on Cohen contained therein) provides strong evidence of the materiality of those obligations. If the obligations were immaterial, and all that remained in the Cohen Agreement was the obligation to continue to pay contingent compensation to Cohen, then Spyglass would not need to acquire the Cohen Agreement as part of the sale.[11]

Thus, even if the Cohen Agreement is not executory on its face — it is — the Bankruptcy Court's decision (and the District Court decision affirming it) should be reversed, discovery should be permitted, and (at minimum) an evidentiary hearing should be held to determine whether there were material ongoing obligations under

[11] But, of course, Spyglass's motivation in acquiring the Cohen Agreement, and the value to Spyglass of the continuing obligations contained in that Agreement, were never disclosed given that Spyglass filed its Motion for Summary Judgment only one day after filing its complaint, thereby foreclosing all discovery.

the Cohen Agreement as to both parties on the Petition Date, such that the Agreement is executory.

## CONCLUSION

The Talent Parties respectfully request that this Court reverse the Bankruptcy Court order granting summary judgment in favor of Spyglass, and the District Court order affirming the Bankruptcy Court's order on appeal.

Dated: August 10, 2020

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP

*/s/ Angela M. Butcher*
Angela M. Butcher (CA No. 242759)
Michael I. Gottfried (*pro hac vice pending*)
Roye Zur (*pro hac vice pending*)
10345 W Olympic Blvd
Los Angeles, CA 90064
(310) 746-4400
AButcher@elkinskalt.com
MGottfried@elkinskalt.com
Rzur@elkinskalt.com

-and-

Christopher P. Simon (DE No. 3697)
Kevin S. Mann (DE No. 4576)
Cross & Simon, LLC
1105 North Market Street, Suite 901
Wilmington, DE 19801
(302) 777-4200
csimon@crosslaw.com
kmann@crosslaw.com

*Attorneys for Appellants*